William E. BECKHAM, Plaintiff

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, et al.,
Defendants.

No. RWT 07cv1999.

United States District Court,
D. Maryland.

July 31, 2008.

Steven C. Kahn, Law Offices of Steven C. Kahn, Rockville, MD, for Plaintiff.

John G. Kruchko, Kruchko and Fries, McLean, VA, Callista Marie Freedman, Glenn Todd Marrow, Eric Scott Hartwig, Maryland Transit Administration, Baltimore, MD, for Defendants.

### MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

Plaintiff brought this civil rights action in the United States District Court for the District of Columbia against both the National Railroad Passenger Corporation ("Amtrak") and the Maryland Transit Administration ("MTA") based on several incidents of racial discrimination that allegedly occurred while Plaintiff was riding a commuter train on the MARC Penn Line between Union Station in Washington, D.C., and Perryville Station in Cecil County, Maryland. Much like that train, this case has traveled from the District of Columbia to Maryland following the granting of MTA's motion to transfer the case to this Court.

When this case pulled into Greenbelt from the District of Columbia, MTA immediately sought to disembark from the case based in part on its purported Eleventh Amendment immunity as to all claims but Count V of Plaintiff's Complaint. Plaintiff, however, contends that MTA should have raised its immunity argument before buying its ticket and catching the train to this Court. The Court disagrees with Plaintiff. As explained more fully below, a state defendant may first file and ride a motion to transfer to a more appropriate venue before raising its Eleventh Amendment immunity in the destination court. Nevertheless, MTA cannot exit the train just yet, as the Court declines to award it summary judgment as to Plaintiff's Count V claims.

## I.

Plaintiff originally filed his Complaint in the United States District Court for the District of Columbia on November 9, 2006. The Complaint includes seven counts, asserting claims for (I) violation of Plaintiff's rights to due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution; (II) violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (III) violation of the Civil Rights Act of 1866, 42 U.S.C. § 1983; (IV) violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; (V) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (VI) common law false detention (either under Maryland law or the law of the District of Columbia); (VII) common law negligent training and supervision (either under Maryland law or the law of the District of Columbia).

In its first pleading, MTA moved to dismiss the case for improper venue pursuant to 28 U.S.C. § 1391(b) or, in the alternative, to transfer the action to this Court pursuant to 28 U.S.C. § 1404(a). (*See* Paper No. 5). On May 22, 2007, Judge Richard J. Leon granted MTA's motion to transfer venue to this Court. (*See* Paper No. 11). Recognizing that both Plaintiff and MTA reside in Maryland and that the alleged discriminatory conduct occurred in Maryland, Judge Leon concluded that Plaintiff could have originally brought the suit in this Court. *Id.* at 3. Judge Leon also found that transferring the case would be more convenient on balance for the parties and witnesses, given that most of them are located in Maryland. *Id.* Finally, Judge Leon determined that the interests of justice would be better served by a transfer because Maryland federal courts are more familiar with the Maryland law that would need to be applied in adjudicating Plaintiff's state law claims. *Id.*

The case was transferred to this Court on July 26, 2007. On August 31, 2007, MTA filed the motion to dismiss or for summary judgment now under consideration.[1]

## II.

The Complaint alleges that Defendants discriminated against him unlawfully on the basis of his race during four separate incidents as he traveled on a MARC train between Washington, D.C., and his home in Maryland. MTA, through an operating agreement with Amtrak, provides commuter train services through the MARC train system on the route traveled regularly by Plaintiff between Perryville Station in Cecil County, Maryland, and Union Station in Washington, D.C. To resolve the pending motion, the Court briefly summarizes the four incidents and then discusses certain

evidence provided by MTA concerning its role in the provision of MARC train services.

### A. The Incidents

#### (i) August 2, 2006

Plaintiff, an African–American, alleges that he was riding the 5:25 p.m. MARC Penn Line train home on August 2, 2006, from his work in Washington, D.C., and was standing near the stairs, along with white passengers, because there were no seats. He contends that the train conductor confronted him at the B WI station and ordered him to take a seat or leave the train, to which Plaintiff responded that he was not the train conductor's "child". Plaintiff further alleges that, after he attempted unsuccessfully to find a seat, the conductor informed Plaintiff and others that the train would not leave until he was seated.

Upon arrival at Baltimore's Penn Station, the conductor allegedly ordered Plaintiff to leave the train to speak with Amtrak police. As Plaintiff purportedly attempted to explain the situation, an officer who may have the last name Dapp allegedly stated loudly that he "did not care what had happened."

#### (ii) August 15, 2006

While Plaintiff traveled on the same train on August 15, he contends that the same train conductor involved in the August 2 incident ordered an African–American passenger to move off the upper level stairs but did not so order a white passenger off the lower level stairs. Upon Plaintiff's pointing out the alleged inconsistency, Plaintiff claims, the conductor threatened that if Plaintiff continued to cause trouble, he would "have to find another way home."

---

1. On August 30, 2007, Amtrak filed its Answer.

Upon reaching BWI, Officer Dapp reportedly boarded the train and instructed Plaintiff to follow him onto the platform. Dapp allegedly told Plaintiff that if he continued to be "disorderly" he would be prosecuted criminally. When Plaintiff attempted to explain the situation, Dapp allegedly instructed him to be quiet, holding a hand in front of Plaintiff's face.

### (iii) August 17, 2006

Again riding the same train on August 17, the same conductor allegedly confronted Plaintiff as he stood in the upper level aisle and ordered him to find a seat but said nothing to a white female passenger standing next to him. Plaintiff avers that he asked the conductor about the inconsistent treatment in a courteous manner, to which the conductor responded by ordering Plaintiff off the train. When Plaintiff refused, the conductor left and returned with Dapp, who allegedly ordered Plaintiff off the train. Still standing next to the white passenger, Plaintiff then asked Dapp about the inconsistent treatment, but Dapp purportedly responded that he did not care.

Upon leaving the train, Dapp allegedly accused Plaintiff of causing trouble and prevented him from reboarding. Plaintiff claims that Dapp again said that he did not care what had happened and explained that he ordered Plaintiff off the train "[b]ecause the conductor asked that you be taken off the train and I do what the conductor tells me to do because it is his train."

### (iv) Videotaping on September 18 and 28, 2006

On September 18, 2006, Plaintiff was videotaping the exterior of the same 5:25 p.m. MARC train, when the same train conductor involved in prior incidents summoned two Amtrak police officers to instruct Plaintiff that videotaping was contrary to Amtrak regulations. On September 28, 2006, Plaintiff was again videotaping the train—this time the interior—when a female passenger allegedly verbally berated him for videotaping and then physically assaulted him. As a result, Plaintiff was purportedly ordered off the train by Amtrak police at Penn Station and criminally charged with disorderly conduct, while the female passenger involved was neither ordered off the train, arrested, nor even warned by Defendants.

On information and belief, Plaintiff claims that (1) the conductor involved in each of these incidents has never called the Amtrak police on white passengers for rules violations and (2) Defendants were aware of prior complaints of race discrimination by the conductor or Dapp, but have taken no effective action to discipline or correct the behavior.

### B. MTA's Role in MARC Train Service

MTA has provided evidence indicating that all MARC train employees apparently are employees of Amtrak, not MTA. Under the operating agreement between MTA and Amtrak, a copy of which was provided by MTA, MTA does not control, direct, or discipline such employees, including Amtrak police personnel, and the MTA Police Force has no jurisdiction over Amtrak Police with regard to MARC service.

According to the operating agreement and affidavits provided by MTA, it has limited input into MARC train personnel matters, as follows: (1) MTA can make Amtrak employees aware of policies governing MARC service; (2) MTA may request that Amtrak withhold a MARC employee who engages in unbecoming conduct, pending a disciplinary hearing; (3) MTA may report infractions by MARC personnel to Amtrak for resolu-

tion; (4) MTA may provide information on the performance and evaluation of senior MARC employees; and (5) MTA may provide input on the replacement of senior MARC staff.[2]

MTA admits that racial discrimination by Amtrak employees would be considered unbecoming conduct under its contract with MTA and, as such, would be prohibited, but MTA claims that it would have no authority to directly discipline an Amtrak employee for such conduct. Moreover, an affidavit from Kathryn Waters, Senior Deputy Administrator—Transit Operation for the MTA, states that she is personally unaware of any discriminatory practices by Amtrak or its employees in the provision of MARC service.

## III.

MTA has moved (1) to dismiss all claims but Count V, on grounds that rely solely on the pleadings, and (2) for summary judgment on Count V, pursuant to Fed. R.Civ.P. 56(c).[3] As such, the Court has applied distinct standards applicable to each type of motion.

### A. Motion to Dismiss

 MTA has moved to dismiss all claims except Count V for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), on grounds that the Eleventh Amendment bars such claims. As MTA points out, however, "the Eleventh Amendment limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities." *Roach v. West Virginia Reg'l Jail & Corr. Auth.*, 74 F.3d 46, 48 (4th Cir.1996). As such, although Elev-

enth Amendment immunity is not a "true limit" on this Court's subject matter jurisdiction, *id.*, the Court concludes that it is more appropriate to consider this argument under Fed.R.Civ.P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power. *Verizon Maryland Inc. v. RCN Telecom Servs., Inc.*, 232 F.Supp.2d 539, 546 (D.Md.2002); *see also, e.g., Coastal Holding & Leasing, Inc. v. Maryland Envtl. Serv.*, 420 F.Supp.2d 441, 443–44 (D.Md.2006). *But see Andrews v. Daw*, 201 F.3d 521, 525 n. 2 (4th Cir.2000)(noting that the Fourth Circuit cases "have been unclear" as to whether Eleventh Amendment immunity should be evaluated under Rule 12(b)(1) or Rule 12(b)(6), and citing cases that have addressed the issue under both rules).

 As it turns out, such a distinction makes little, if any, difference here because the Court has relied solely on the pleadings with respect to the Eleventh Amendment issue, construing them in the light most favorable to Plaintiff. *See Verizon Maryland*, 232 F.Supp.2d at 546–47. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may contend either (1) that the complaint fails to allege facts sufficient to establish subject matter jurisdiction or (2) the alleged jurisdictional facts are untrue. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Where, as here, the defendant challenges the sufficiency of facts pleaded, as opposed to their veracity, the Court must accept the allegations as true and construe them in the light most favorable to the plaintiffs, relying solely on the pleadings and disregard-

---

**2.** The operating agreement does not mention whether train conductors and Amtrak police are senior staff.

**3.** For certain claims that MTA moves to dismiss, it also moves alternatively for summary

judgment based on materials outside the pleadings. The Court, however, has not reached these alternative arguments and, instead, rests its dismissal of all claims except Count V on the pleadings alone.

ing affidavits or other materials.[4] *Id.; Star Scientific Inc. v. R.J. Reynolds Tobacco Co.,* 174 F.Supp.2d 388, 391 (D.Md. 2001). In such a case, like with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the defendant may prevail only if entitled to judgment as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

### B. Motion for Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

To avoid summary judgment on a properly supported motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. 2505. Of course, the Court must view the evidence in the light most favorable to the nonmoving party. *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th

Cir.2006). Nevertheless, this Court recognizes the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993).

As a general rule, however, summary judgment is not appropriate until the nonmoving party has had the opportunity to discovery information essential to an opposition to summary judgment. *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Indeed, should the nonmoving party present an affidavit that adequately articulates the need for specific discovery, the district court has the authority under Fed.R.Civ.P. 56(f) to deny premature motions for summary judgment and to allow discovery to proceed. *See* Fed. Rule Civ. P. 56(f). Even when presented with a Rule 56(f) affidavit, however, a court may grant summary judgment if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees,* 55 F.3d 943, 954 (4th Cir.1995).

### IV.

MTA's motion includes arguments for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and for summary judgment pursuant to Fed.R.Civ.P. 56(c). Specifically, MTA moves to dismiss all claims except Count V based on sovereign immunity. MTA also argues that the Court should award it summary judgment on Count V because

---

**4.** If the movant challenges the veracity of the jurisdictional facts, the burden of proving the existence of subject matter jurisdiction lies with the plaintiff. *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999). In such a case, "the court may consider exhibits outside the pleadings" and "is free to weigh the evidence and satisfy itself as to the existence of itself as to the existence of its power to hear the case." *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995)(quotation marks and citations omitted).

Plaintiff cannot prove that MTA uses federal funds to affirmatively support racial discrimination.[5]

### A. Sovereign Immunity

■ MTA asserts sovereign immunity under the Eleventh Amendment in defense of all counts except Count V (violation of Title VI)[6] on grounds that it is a state agency and has not waived such immunity. Anticipating Plaintiff's response, MTA contends that the Maryland General Assembly has not waived MTA's sovereign immunity through its enactment of section 7–702 of the Maryland Transportation Article.

Plaintiff argues that MTA has waived its sovereign immunity (1) not only through the enactment of section 7–702, but also (2) by voluntarily embarking on a joint venture with Amtrak,[7] and (3) by voluntarily appearing in federal court to request dismissal on grounds of improper venue without asserting immunity.[8]

■ The Eleventh Amendment[9] generally bars a suit by private parties seeking a retroactive award of monetary relief to be paid from a State's coffers. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Such suits

---

5. Alternatively, MTA moves to dismiss (1) Counts I, II, and III, arguing that these claims consist of a single cause of action under 42 U.S.C. § 1983, and that such a consolidated section 1983 claim fails because (a) MTA is not a "person" within the meaning of the statute and (b) Plaintiff cannot enforce Fifth Amendment Due Process and Equal Protection claims against a state agency; (2) Count IV because Plaintiff has not filed a complaint of discrimination with the appropriate Maryland state agency, as required under 42 U.S.C. § 2000a–3 for the claimed injunctive relief; and, (3) in the event that the Court dismisses all claims that could serve as a basis for federal question jurisdiction, state law claims under Counts VI and VII based on the Court's discretion to decline supplemental jurisdiction in such a scenario. Because the Court will dismiss all claims other than Count V on the basis of the Eleventh Amendment's bar on the exercise of its jurisdiction, the Court has not reached MTA's alternate grounds for dismissing the federal claims. *Ex Parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1900)("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). MTA's argument as to the state law claims is mooted by the Court's retention of Count V.

6. MTA concedes and the Court accepts that MTA cannot assert sovereign immunity as to Count V because Congress has waived the States' sovereign immunity against Title VI claims pursuant to its legislative powers un-

der the Fourteenth Amendment. *See* 42 U.S.C. § 2000d–7.

7. The Court may briefly dispose of this argument that MTA impliedly waived its Eleventh Amendment immunity by participating in a joint venture with Amtrak to provide interstate transportation services. Although Plaintiff cites *Parden v. Terminal R.,* 377 U.S. 184, 196, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), and related cases, the Supreme Court has soundly rejected this type of constructive waiver: "We think that the constructive-waiver experiment of *Parden* was ill-conceived, and see no merit in attempting to salvage any remnant of it." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 679–81, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)(rejecting an argument that a state agency constructively waives sovereign immunity by participating in an enterprise for profit in a field traditionally occupied by private persons or corporations and removed from core state functions).

8. There can be no doubt that MTA is a state agency and, as such, has the same rights as a State under the Eleventh Amendment. *See Weide v. Mass Transit Admin.,* 628 F.Supp. 247, 250 n. 3 (D.Md.1985). Plaintiff does not challenge this conclusion.

9. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

are permitted only if the State has waived its immunity, *see, e.g., Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), or the suit is brought pursuant to a congressional enactment made pursuant to the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–56, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

### (i) Waiver by Statute

■ Plaintiff contends that the Maryland General Assembly waived MTA's Eleventh Amendment sovereign immunity through its enactment of section 7–702(a) of the Maryland Transportation Code, which subjects MTA to liability "for its contracts and torts and for the torts of its officers, agents, and employees." [10] MTA argues that (1) section 7–702 does not operate as a waiver of Eleventh Amendment immunity and, alternatively, (2) to the extent it waives immunity, it does not do so for cases like the instant one where Plaintiff has not alleged, and cannot show, that an officer, agent, or employee of MTA committed the alleged torts in question. Because the Court concurs with Judge Joseph H. Young of this Court in *Weide v. Mass Transit Administration*, 628 F.Supp. 247 (D.Md.1985), that section 7–702 does not constitute a waiver of Eleventh Amendment immunity so as to subject MTA to suit in *federal court*, the Court declines to reach the secondary is-

sue of whether the alleged torts here were committed by MTA's officers, agents, or employees. [11]

■ "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)(emphasis in original). The Court must strictly construe any purported waiver of Eleventh Amendment immunity by statute. *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347 ("In determining whether a state has waived its constitutional protection under the Eleventh Amendment, [the Court] will find waiver only when stated by the most express language or by such overwhelming implications from the text [as will] leave no room for any other reasonable construction."). The United States Supreme Court has stated that, "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)(emphasis in original). As such, a general waiver of sovereign immunity by a State, although it may subject the State or its agencies to suit in the State's own courts, "does not constitute a waiver by a state of its constitutional immunity under the Elev-

---

**10.** Section 7–702 provides in relevant part:

§ 7–702. Liability for contracts and torts; institution of action; notice of claims

(a) *Administration liable for contracts and torts.*—Subject to the provisions of this section, [MTA] is liable for its contracts and torts and for the torts of its officers, agents, and employees in connection with the performance of the duties and functions of [MTA] under this title.

(b) *Exclusive remedy is suit.*—The exclusive remedy for a breach of contract or for a tort committed by [MTA], its officers,

agents or employees is a suit against [MTA]....

Md.Code Ann., Transp. § 7–702(a)–(b).

**11.** For the same reason, it is unnecessary to consider Plaintiff's apparent argument that the Court cannot determine the question of statutory waiver without further discovery regarding the agency relationship between MTA and Amtrak. No amount of discovery would be helpful to the resolution of whether section 7–702 can be interpreted as a waiver of MTA's Eleventh Amendment immunity.

enth Amendment from suit in federal court." *Fla. Dep't Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)(per curiam).

In *Weide,* Judge Young applied these well-established principles to conclude that section 7–702 does not constitute a waiver of Eleventh Amendment immunity from suit in federal court. *Weide v. Mass Transit Admin.,* 628 F.Supp. 247, 251 (D.Md.1985). There, an MTA employee sued the agency and another employee in this Court for, inter alia, violation of 42 U.S.C. § 1983 based on an alleged deprivation of the plaintiff's Fourteenth Amendment rights. *Id.* at 249. Unlike here, there was no dispute that the person who allegedly committed the unlawful actions was an MTA employee.[12] *See id.* at 248. Nevertheless, Judge Young refused to infer a specific waiver of immunity from suit in federal court based on the general provision of a judicial remedy in section 7–702. *Id.* at 250–51.

Plaintiff attempts to undermine *Weide* by arguing that the Court there reached its conclusion "without significant analysis." The significance of a court's analysis, however, lies not in its length but in the soundness of its reason. *Weide* relied primarily on *Florida Nursing Home Association, supra. See Weide,* 628 F.Supp. at 250. There, the Supreme Court held that a Florida law permitting a state agency to "sue and be sued" did not constitute a waiver of the State's Eleventh Amendment immunity because such a general waiver does not constitute a waiver of immunity from suit *in federal court. Fla. Nursing Home Ass'n,* 450 U.S. at 149–50, 101 S.Ct. 1032. Although not specifically cited in *Weide,* the Supreme Court long ago explained why it requires a specific waiver when it upheld a State's Eleventh Amendment immunity despite a state statute permitting suit generally for unlawful collection of the State's taxes: "it is not consonant with our dual system for the federal courts ... to read the consent to embrace federal as well as state courts.... [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."[13] *Great N. Life Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *see also Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–80, 66 S.Ct. 745, 90 L.Ed. 862 (1946)(holding that State's authorization of suits against it "in any court of competent jurisdiction" is insufficient to waive immunity). Given this clear Supreme Court precedent, if Judge Young's analysis in *Weide* was brief, it was only because not many words were needed.

Based on this precedent and the sound holding in *Weide,* the Court again concludes that the State of Maryland has not waived the Eleventh Amendment immunity of MTA through its enactment of section 7–702 so as to subject it to suit in federal court.[14] The statute at issue does

---

**12.** This fact is noted only to highlight that the holding of *Weide* is applicable whether or not the tort in question was committed by an MTA officer, agent, or employee.

**13.** The Court recognizes that the *Read* Court went on to discuss the legislative history of the statute in question and the statute's instructions regarding the type of judgment the court was to render before concluding that "[i]t is clear to us that the legislature of Okla-

homa was consenting to suit in its own courts only." Any argument to distinguish the broader holding of *Read* on its facts, however, ended with the Supreme Court's citation of the *Read* rule in *Pennhurst. See* 465 U.S. at 99 n. 9, 104 S.Ct. 900.

**14.** As MTA's argument alludes, a state court considering this case would still need to determine whether section 7–702 encompasses the claims so as to waive MTA's sovereign

not come close to providing the type of "express language" or "overwhelming implications," *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347, required to find such a waiver by statute. *See also Palotai v. Univ. of Md.*, 959 F.Supp. 714, 718–19 (D.Md.1997)(upholding immunity from suit in federal court despite two statutes that precluded the defense of sovereign immunity in, among other fora, a "judicial proceeding").

### (ii) Waiver by Voluntary Appearance and Judicial Estoppel

■■■ Plaintiff also contends that MTA waived its constitutional immunity by voluntarily appearing in federal court to request dismissal on grounds of improper venue without raising the issue of immunity, surmising that MTA's transfer request may have been motivated by favorable Fourth Circuit precedent. Plaintiff urges that MTA should be judicially estopped from claiming immunity because it has played "fast and loose" with the courts by first arguing in the District of Columbia court that venue was improper because the "expected witnesses" reside in Maryland and a Maryland court would have greater familiarity with governing laws, and then raising an immunity defense upon arrival at this Court. As discussed below, the Court agrees with MTA that an appearance before a federal court for the purpose of moving to transfer venue does not constitute a waiver of Eleventh Amendment immunity.

■■■ It has long been established that a party waives its sovereign immunity under the Eleventh Amendment by appearing in federal court voluntarily to adjudicate the merits of a claim. *See Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct.

878, 27 L.Ed. 780 (1883)(holding that a State's voluntary appearance as an intervenor waives Eleventh Amendment immunity); *see also Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947)(holding that a State waives its immunity when it makes a claim in federal bankruptcy court). Unlike in a case of waiver by statute, waiver by litigation conduct does not require a showing of clear intent:

> [W]aiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of "immunity" to achieve litigation advantages.

*Lapides v. Bd. of Regents*, 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)(citing *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 393, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998)(Kennedy, J. concurring)). In sum, the Supreme Court continues to endorse the general rule that, "where a State *voluntarily becomes a party* to a cause and *submits its rights for judicial determination*, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* at 619, 122 S.Ct. 1640 (quoting *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906))(emphasis on "voluntarily" added in Lapides, other emphasis added here); *see generally* 13 Wright, Miller & Cooper, Fed. Practice & Proc. § 3524.

In arguing that MTA has waived its Eleventh Amendment immunity by voluntarily appearing in the D.C. District Court, Plaintiff principally relies on *Vecchione v.*

immunity for suit in state court. *See Palotai v. Univ. Md.*, 959 F.Supp. 714, 718 n. 4

(D.Md.1997).

*Wohlgemuth,* 558 F.2d 150 (3d Cir.1977).[15] Although *Vecchione* cited *Clark v. Barnard, supra,* for the proposition that "[a] general appearance in litigation in a federal court may be such a waiver," it also recognized that a State may raise an Eleventh Amendment defense for the first time on appeal. *Id.* at 158–59 (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). The Third Circuit merely held that the Commonwealth of Pennsylvania could not assert Eleventh Amendment immunity to stop enforcement of a consent decree it had entered into during an earlier contempt proceeding because it had appealed neither the original injunction nor the resulting consent decree. *Id.* at 158–59. Far from focusing on Pennsylvania's appearance at the start of a case, *Vecchione* reasoned that "waiver [of Eleventh Amendment immunity] must be deemed to have become final at the latest when the resulting judgment has become final. Otherwise a judgment in a suit in which the state appears and litigates would … be a mere advisory opinion." *Id.* at 159 (noting that Pennsylvania's Eleventh Amendment contention was not made until almost a year after the time for appeal had expired). Here, we are nowhere close to a final judgment.

The inapplicability of *Vecchione* to the instant case is illustrated well by *Unix System Labs., Inc. v. Berkeley Software Design, Inc.,* 832 F.Supp. 790, 801–02 (D.N.J.1993). Although not cited by either party here, *Unix* specifically held that a motion to transfer venue, among other actions, does not constitute a voluntary appearance for purposes of waiving Eleventh Amendment immunity. *Id.* at 801–02. In *Unix,* Judge Dickinson R. Debevoise held that a state university had not waived its Eleventh Amendment immunity where it had previously (1) moved to dismiss and strike pleadings because individual state university officials lacked capacity to be sued; (2) moved to dismiss for lack of personal jurisdiction over the state university; and (3) moved to dismiss or transfer for inconvenient or improper forum.[16] *Id.* at 801. In so holding, Judge Debevoise specifically distinguished *Vecchione* (which was binding precedent for him), reasoning that it and other cases finding waiver by litigation "all involve actions in which the state acted as an affirmative participant rather than as a beleaguered defendant." *Id.* at 801.

Although neither *Vecchione* nor *Unix* is binding on this Court, *Unix* is directly on point and its reasoning is persuasive. The filing of a preliminary motion to dismiss for improper venue or to transfer venue does not constitute a decision to "voluntarily become[ ] a party to a cause and submit[ ] its rights for judicial determination." *Lapides,* 535 U.S. at 619, 122 S.Ct. 1640. Far from voluntarily becoming a party to the case and submitting its rights for judicial determination, MTA "entered the action involuntarily, and it has sought only to exit as quickly as possible for reasons unrelated to the merits." *Unix,* 832 F.Supp. at 801 n. 5. Specifically, Plaintiff dragged MTA into federal court in the District of Columbia, a court that MTA argued and

---

**15.** Plaintiff's citation to *In re Sec. of Dept. of Crime Control & Pub. Safety,* 7 F.3d 1140, 1148 n. 6 (4th Cir.1993) is unhelpful. There, the Court of Appeals *rejected* a suggestion that the State waived its immunity, noting that it "can find no authority" to suggest that a State's special appearance as a named defendant to challenge jurisdiction constitutes a waiver.

**16.** The fact that Judge Debevoise denied these motions, *id.* at 796, does not detract from the applicability of *Unix.* If anything, this fact supports the right of a State to move to dismiss based on Eleventh Amendment immunity even where its prior motion to transfer was eventually determined to be without merit.

Judge Leon agreed was not the appropriate federal court to decide the remaining disputes, including claims made by Plaintiff involving the application of Maryland law. Once the case was transferred to a Maryland federal court, MTA promptly filed a motion to dismiss or for summary judgment as to all claims on various grounds, including sovereign immunity.

As Judge Debevoise eloquently stated, a State "is entitled to defend itself as earnestly as any other defendant, and to do so with all of the weapons in the arsenal of the Federal Rules of Civil Procedure." *Id.* at 801–02. Under the Federal Rules of Civil Procedure, a defendant is permitted to—and, indeed, must—assert improper venue either by a pre-answer motion or the answer itself, or waive such a defense. *See* Fed.R.Civ.P. 12(b)(3) & 12(h)(1). And while lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process are similarly waivable if a defendant files a pre-answer motion without raising such defenses, *see* Fed.R.Civ.P. 12(g) and 12(h)(1), a defendant may raise lack of subject matter jurisdiction and move to dismiss for failure to state a claim in a separate preliminary motion, *see* Fed. R.Civ.P. 12(h)(2)-(3). In this manner, a defendant who believes it has been sued in an improper venue may first seek a transfer without needing to raise simultaneously its other defenses to the claims, thereby increasing the likelihood that the more appropriate court may decide all of its other legal defenses together.[17]

Although the constitutional parameters of a State's Eleventh Amendment immunity, of course, cannot be changed by the Federal Rules of Civil Procedure, this does not mean that the Court should not evaluate a State's purported waiver of such immunity by litigation conduct in light of the strictures laid down in the Rules. These rules are set forth in exacting detail to guide parties through the pitfalls of litigation. A State that abides by the Rules by first filing a motion to transfer and then filing a subsequent motion in the transferee court raising several legal grounds for dismissal or summary judgment, including Eleventh Amendment immunity, should not be deemed to have voluntarily become a party to the case or to have submitted its rights for judicial determination. Such a rule permits the State to seek resolution of the Court's subject matter jurisdiction and any grounds for asserting Plaintiff's failure to state a claim for which relief may be granted at one time in a venue that is most appropriate for resolving the legal issues presented, including any state law claims that might be raised. Without such a rule, a state defendant like MTA would be required to raise both venue and Eleventh Amendment immunity in the transferor court, while being permitted to raise other defenses in a later motion after transfer. Plaintiff has posited no reason for requiring such a special appearance and the Court will not impose such a requirement on States where the Federal Rules of Civil Procedure do not require it. *See Speir v. Robert C. Herd & Co.*, 189 F.Supp. 436, 438 (D.Md.1960)(explaining the elimination of the need for a special appearance).

Before concluding, the Court must briefly consider whether the Supreme Court's most recent pronouncement concerning

---

**17.** The Court recognizes that MTA could have included all of the arguments submitted in the instant motion along with venue motion before the D.C. District Court, and could have requested that Judge Leon decide the motion to transfer first, leaving the other dismissal arguments for this Court. Although such a pleading is permitted, it is not required under the Rules, and MTA, like any other defendant, should be permitted to exercise its discretion in defending itself against a claim.

the Eleventh Amendment changes this conclusion. In *Lapides,* which was decided after *Unix,* the Supreme Court held that a State's removal of an action from the State's own court to a federal court constitutes a voluntary invocation of federal court jurisdiction and, as such, a waiver of its Eleventh Amendment immunity. 535 U.S. at 620, 122 S.Ct. 1640. The Court reasoned that a rule finding "waiver through ... invocation of federal court jurisdiction avoids inconsistency and unfairness." *Id.* at 623, 122 S.Ct. 1640.

Comparing MTA's actions to the removal by the state defendant in *Lapides,* one is tempted to focus on certain similarities. Although MTA was brought into this case involuntarily, so was the state defendant in *Lapides. See Lapides,* 535 U.S. at 620, 122 S.Ct. 1640. Also like the state defendant in *Lapides,* MTA voluntarily requested that the case be moved from the original court in which it was sued to another court. In both cases, this second court was a federal one. Building on these similarities, one might argue that MTA, like the state defendant in *Lapides,* sought to move its case to a federal court and, therefore, should be not be permitted to argue that the court which it sought cannot adjudicate the case.

Ultimately, these superficial similarities are outweighed by important differences between this case and *Lapides.* The Supreme Court in *Lapides* repeatedly stated that its finding of waiver was specifically premised on the State's voluntary invocation of federal *jurisdiction. See Lapides,* 535 U.S. at 620, 122 S.Ct. 1640 (concluding that the state defendant "voluntarily invoked the federal court's jurisdiction" by removing the case); *id.* at 622, 122 S.Ct. 1640 (describing past cases in which voluntary invocation of a federal court's jurisdiction sufficed to waive immunity); *id.* (discussing the "the rule governing voluntary

invocations of federal jurisdiction"); *id.* at 621, 122 S.Ct. 1640 (discussing the rule of "waiver through a state attorney general's invocation of federal-court jurisdiction"); *id.* at 624, 122 S.Ct. 1640 (summarizing that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter ... in a federal forum"). In *Lapides,* the plaintiff brought suit against the state defendant in one of the State's own courts and the State sought to leave that court and bring the case to a federal court, thereby invoking federal jurisdiction. Here, on the other hand, Plaintiff invoked federal jurisdiction in its initial complaint. When MTA appeared, the case was already in federal court and MTA sought only to transfer the case from one federal court to another federal court after jurisdiction had already been invoked.

■ Finally, Plaintiff suggests that MTA's motion to transfer was motivated by favorable Fourth Circuit precedent, and MTA should therefore be judicially estopped. The Supreme Court in *Lapides* rejected such analysis in evaluating waiver, observing that "[m]otives are difficult to evaluate, while jurisdictional rules should be clear." *Lapides,* 535 U.S. at 621, 122 S.Ct. 1640. As the Court has already alluded and as illustrated here, a State could have numerous substantive defenses to raise in a preliminary motion following transfer, including defenses based on the law of the State in which the transferee court sits. Such defenses might even be abandoned after transfer upon further reflection. Under the Federal Rules of Civil Procedure, a defendant may raise all such defenses after a court has decided whether to retain or transfer a case to a new venue. *See Unix,* 832 F.Supp. at 801–02. As such, MTA is free to exercise its sovereign immunity rights to the extent they exist with-

out being estopped and especially not because of a guess as to the State's intent in moving to transfer.

Accordingly, because MTA has neither waived its Eleventh Amendment immunity by statute nor by its motion to transfer venue, the Court will grant the motion to dismiss on these grounds as to all claims except Count V.

### B. Count V: Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d

MTA argues that it is entitled to summary judgment on Count V, by which Plaintiff claims MTA violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. MTA contends that Plaintiffs cannot show that either (1) any MTA official, employee, or agent—as opposed to employees of Amtrak—actually denied him access to the MARC train service, or (2) MTA affirmatively used federal funds to promote racial discrimination. As support for this second contention, MTA provides an affidavit from Kathy Waters, Senior Deputy Administrator—Transit Operations, for MTA, stating that (1) any federal funds received by MTA include the requirement that MTA comply with federal laws prohibiting discrimination and (2) state law and state policy prohibit MTA from engaging in racial discrimination when providing transportation services. MTA reasons that such restrictions on its activities mean that MTA does not and cannot use federal funds that it receives to affirmatively promote racial discrimination in its provision of public transportation.

Plaintiff responds that MTA's motion is premature because he has not had the opportunity to discover information regarding the actual practices of MTA and Amtrak under their operating agreement, as opposed to the terms thereof, to possibly establish an agency relationship between the two defendants.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits a state agency like MTA from excluding persons from participation in, denying benefits of, or discriminating under any program or activity receiving federal financial assistance on the basis of race, color, or national origin.[18]

■■■■ As to Plaintiff's reliance on an agency relationship between MTA and Amtrak, it is well-established under Maryland law that "the test in determining whether a person is a servant or an independent contractor is whether the employer has the right of control over the employee in respect to the work to be performed." See Baltimore Harbor Charters Ltd. v. Ayd, 365 Md. 366, 780 A.2d 303 (2001). Courts consider the following factors in determining whether a party is an "employee" or "agent" of another: (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. See id.

■■ The Court declines to award summary judgment to MTA as to Count V at this time, given that discovery has not commenced. Plaintiff has provided an affidavit pursuant to Fed.R.Civ.P. 56(f) describing sufficiently why he is entitled to discovery. First, although it is undisputed that no MTA employees were directly involved in the alleged discrimination at

---

**18.** Specifically, section 2000d provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

issue, it would be inappropriate to deny Plaintiff any opportunity to discover facts relevant to an agency relationship with Amtrak that might establish liability under Count V.[19] For instance, under the agreement between MTA and Amtrak, MTA has authority to request withholding of Amtrak employees for unbecoming conduct. Plaintiff must be permitted to explore in appropriate discovery the actions or inactions taken by MTA with respect to Amtrak employees that might establish an agency relationship encompassing the actions at issue. In this way, the self-serving statement by Waters that she is personally unaware of any discriminatory actions by Amtrak employees is insufficient to support summary judgment without the opportunity for Plaintiff to engage in discovery on this point and to explore whether others within MTA had such knowledge. The statement by Waters that such discriminatory actions would violate the contract between Amtrak and MTA merely begs the question whether such violations took place.

Second, MTA argues that the Complaint fails to allege and there is no proof that MTA is *affirmatively* using federal funds to promote discrimination on the MARC train service. The only case cited by MTA, however, sets up no requirement for an "affirmative" use of funds, but instead mentions that plaintiffs there had alleged only that "federal funding is being used to stop minority motorists in a discriminatory fashion." *Maryland State Conference of NAACP Branches v. Maryland Dept. of State Police,* 72 F.Supp.2d 560, 567 (D.Md.

1999). To insert an "affirmativeness" requirement would be tantamount to inserting a requirement of intent that is simply not fairly read into the statute. In this respect, the statements by Waters in her affidavit (1) that any funds received by the MTA from the federal government are contingent upon MTA's compliance with federal law prohibiting racial discrimination and (2) that state law and policy prohibit MTA from engaging in racial discrimination when providing transportation services, are insufficient to carry the day on a motion for summary judgment. Even if it is true that such discriminatory use of funds would violate federal and state law, this does not prove that such discrimination did not take place. Indeed, if the illegality of an action could be used to prove that an action was not taken, for instance, criminal prosecutions would face an insurmountable and illogical hurdle.

## V.

For the reasons stated above, the Court will grant MTA's motion to dismiss as to all claims other than Count V based on MTA's Eleventh Amendment sovereign immunity. The Court will deny MTA's motion as to Count V because summary judgment is inappropriate at this stage in the proceedings where discovery has not yet commenced.

## ORDER

Upon consideration of Defendant MTA's Motion to Dismiss and Alternatively, Motion for Summary Judgment [Paper No. 19], the response and reply thereto, and

---

19. The Court recognizes that at least two courts have held that there is no vicarious liability under Title VI absent evidence of a sufficient nexus between recipient of federal funding and the alleged discriminatory acts. *See Glover v. Donnell,* 878 F.Supp. 898, 899 n. 2 (S.D.Miss.1995); *see also Bowers v. NCAA,* 9 F.Supp.2d 460, 493 (D.N.J.1998)(citing *Glo-* *ver*). Although MTA may argue after discovery that this standard is correct and that Plaintiff has failed to produce evidence sufficient to prove such a nexus, the Court declines to take a position on the proper standard for evaluating at Title VI claim at this time.

the arguments of counsel presented at the hearing conducted before the undersigned on December 17, 2007, for the reasons stated in the accompanying memorandum opinion, it is this 31 st day of July, 2008, by the United States District Court for the District of Maryland,

**ORDERED,** that Defendant MTA's Motion to Dismiss and Alternatively, Motion for Summary Judgment [Paper No. 19] is **GRANTED IN PART** and **DENIED IN PART;** and it is further

**ORDERED,** that Defendant MTA's Motion to Dismiss and Alternatively, Motion for Summary Judgment [Paper No. 19] is **GRANTED** as to all claims except Count V; and it is further

**ORDERED,** that Defendant MTA's Motion to Dismiss and Alternatively, Motion for Summary Judgment [Paper No. 19] is **DENIED** as to Count V.